**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Zaki Malik Saleem,

                Petitioner,

v.

Lisa Stenseth,

                Respondent.

Case No. 25-cv-319 (PAM/DJF)

**REPORT AND**
**RECOMMENDATION**

This matter is before the Court on Petitioner Zaki Malik Saleem's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* ("Petition") (ECF No. 1). Mr. Saleem is incarcerated at the Minnesota Correctional Facility – Rush City ("MCF-Rush City") and serving a sentence of 324 months of imprisonment for illegal possession of a firearm, first-degree aggravated robbery, kidnapping, second-degree assault, and first-degree burglary. (ECF No. 1 at 1); *State v. Saleem*, No. A22-1056, 2023 WL 4852979, at *1-2 (Minn. Ct. App. July 31, 2023). These convictions stem from "the armed robbery of a credit union in Minneapolis on February 7, 2020." *Saleem*, 2023 WL 4852979, at *1.

Mr. Saleem's Petition may be construed to challenge his convictions on three related grounds. He argues the state trial court violated his Sixth Amendment right to counsel by: (1.) failing to conduct an adequate inquiry into whether an irretrievable breakdown occurred in his relationship with his attorney that justified substitution of counsel; (2.) denying his repeated requests to substitute his court-appointed attorney based on the court's improper application of the legal standard; and (3.) denying his motions for substitute counsel based on an unreasonable determination of the facts, namely, failing to recognize that he and his attorney had an irretrievable breakdown in their relationship. (ECF No. 1-1 at 3-4; ECF No. 3 at 2-3.) Respondent Lisa Stenseth, the Warden

of MCF-Rush City, opposes the Petition. (ECF No. 15 at 1-2.) Based on the parties' written submissions and exhibits, and on the entire file, the Court recommends the Petition be denied.

## BACKGROUND

In June 2020, the district court appointed Arthur Martinez to represent Mr. Saleem. *See Saleem*, 2023 WL 4852979, at *7. Mr. Saleem quickly made his dissatisfaction with Mr. Martinez evident. At a September 2020 hearing, he stated that Mr. Martinez was not adequately communicating with him or meeting with him to discuss the case. *Id.*; (ECF No. 3 at 4-5). The trial court attempted to assuage Mr. Saleem's concern by telling him that the court had known Mr. Martinez for 30 years and knew him to be an excellent attorney. (ECF No. 3 at 6.) At the next hearing, in November 2020, Mr. Saleem requested substitute counsel. *See Saleem*, 2023 WL 4852979, at *7; (ECF No. 16 at 204-05). He ultimately decided to continue with Mr. Martinez, however, because he did not wish to proceed pro se, and the public defender's office was not willing to provide him with alternative counsel. *See Saleem*, 2023 WL 4852979, at *7; (ECF No. 16 at 204-05).

Over the next year, Mr. Saleem made vacillating decisions regarding Mr. Martinez's representation. In a May 3, 2021 hearing, he again expressed dissatisfaction with Mr. Martinez on the grounds that: (1.) he did not believe he had personally seen all the evidence produced in discovery; (2.) he continued to believe Mr. Martinez was not adequately communicating with him concerning the case; and (3.) he believed Mr. Martinez should have filed motions to suppress and to have a probable cause hearing. (ECF No. 3 at 6-7; ECF No. 19 at 2-4.) The court again attempted to assuage Mr. Saleem's concerns by explaining that Mr. Martinez's strategic decisions were not unreasonable and ordering the State to supplement certain deficiencies in its production of discovery. (ECF No. 19 at 5-6.) Then, at a hearing less than a week later, Mr. Saleem asked for leave to

proceed pro se, *see Saleem*, 2023 WL 4852979, at *7; (ECF No. 3 at 7-8; ECF No. 19 at 11), and the court granted his request. *See Saleem*, 2023 WL 4852979, at *7; (ECF No. 3 at 7-8). In August 2021, Mr. Saleem requested advisory counsel, but he quickly retracted the request after the court informed him that Mr. Martinez would be his advisory counsel. *Saleem*, 2023 WL 4852979, at *7; (ECF No. 3 at 8). A month later, Mr. Saleem stated he no longer wished to proceed pro se, and the court reappointed Mr. Martinez as his counsel. *Saleem*, 2023 WL 4852979, at *7; (ECF No. 3 at 8).

As the trial process got underway in March 2022, Mr. Saleem's erratic decision-making continued. During voir dire, Mr. Saleem expressed a desire for alternative representation due to: (1.) dissatisfaction with Mr. Martinez's strategic decisions during voir dire; (2.) a stated belief that Mr. Martinez was not paying attention during voir dire; and (3.) continued frustration with the alleged ongoing lack of communication from Mr. Martinez. (ECF No. 16 at 211-23.) He also alleged that Mr. Martinez caused his girlfriend to cry by telling her that he would not be released from jail unless he posted bail. (*Id.* at 218-19.) The court expressed sympathy but told Mr. Saleem that his options were limited to either proceeding pro se or continuing with Mr. Martinez as his attorney. (*Id.* at 221-22.) Mr. Saleem chose the latter option. (*Id.* at 222-23.) Two days later, Mr. Saleem changed his mind again and asked to proceed pro se without advisory counsel. (*Id.* at 227-41.) The court granted his request and discharged Mr. Martinez. (*Id.* at 241.) The following week, Mr. Saleem told the court that, after considering the matter over the weekend, he no longer wished to proceed pro se and asked to have the public defender's office reappoint counsel. (*Id.* at 242.) The court denied Mr. Saleem's motion but appointed Mr. Martinez as advisory counsel. (*Id.* at 246.)

Mr. Saleem's pro se representation quickly went south. The government called its first witness and Mr. Saleem, in an apparent act of protest, decided not to respond to the court's questions about whether he wished to object at various points during direct examination. (*Id.* at 264.) After a

brief recess, Mr. Saleem informed the court that he was refusing to participate in the proceedings and thereafter remained silent. (*Id.* at 265, 267-68, 276-79, 282, 284-85, 287.) Later that day and in light of Mr. Saleem's conduct, which the court found to be "disruptive", the court appointed Mr. Martinez to represent Mr. Saleem in order to ensure the fairness of the proceedings. (*Id.* at 288-94.) Mr. Martinez initially stated that he could not competently represent Mr. Saleem because he had been absent for part of the proceedings. (*Id.* at 291-92.) In the alternative, he argued the court should provide him with a transcript of the proceedings he missed so that he could get up to speed on what had occurred in his absence. (*Id.* at 292.) The court acknowledged Mr. Martinez's concerns and moved forward with Mr. Martinez's reappointment as counsel for Mr. Saleem upon ordering that a transcript be provided to him immediately. (*Id.*) The court then adjourned the proceedings to allow Mr. Martinez time to review the transcript and prepare. (*Id.* at 291-93.)

The trial proceeded and the jury found Mr. Saleem guilty on all counts. *Saleem*, 2023 WL 4852979, at *2. Mr. Saleem filed a direct appeal to the Minnesota Court of Appeals on July 27, 2022. *Id.* at *1. He argued, among other things, that the trial court violated his Sixth Amendment rights by failing to conduct an inadequate inquiry into his relationship with his attorney and denying his requests for substitute counsel. (ECF No. 16 at 31-45.) The Court of Appeals affirmed the trial court's decision on July 31, 2023. *Saleem*, 2023 WL 4852979, at *1. Mr. Saleem petitioned the Minnesota Supreme Court for further review of his appeal on August 30, 2023. (ECF No. 16 at 193-97.) The Minnesota Supreme Court denied his petition on October 25, 2023. (ECF No. 1 at 2; ECF No. 15 at 8, citing ECF No. 16 at 201-22.) Mr. Saleem thereafter timely filed the habeas Petition before this Court on January 27, 2025. (ECF No. 1.)

## DISCUSSION

### I.    Standard of Review

28 U.S.C. § 2254 is the statutory framework for federal habeas relief from state court convictions. *See* 28 U.S.C. § 2254(a). Under Section 2254(d), a federal court may grant habeas relief if: (1.) the state court made "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1); or (2.) the state court made "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding", 28 U.S.C. § 2254(d)(2). In essence, Section 2254(d)(1) governs federal courts' review of state courts' legal conclusions, while Section 2254(d)(2) governs federal courts' review of state courts' factual determinations. *See Walton v. Hill*, 652 F. Supp. 2d 1148, 1164 (D. Or. 2009); *Walker v. Bartowski*, No. 11-cv-400 (ES), 2014 WL 2094027, at *7 (D.N.J. May 20, 2014).

Federal habeas relief under Section 2254 is intended to be narrow and limited to "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citation modified). To succeed, a habeas claimant bears the burden of showing that the "state court blundered so badly that every fairminded jurist would disagree with the decision. Only then is a decision so lacking in justification that its error precludes even the possibility for fairminded dispute." *Klein v. Martin*, 607 U.S. 213, 221 (2026) (citation modified).

## II.     Section 2254(d)(1) – The State Courts' Legal Decisions

Mr. Saleem's first two grounds for habeas relief concern legal decisions: (1.) failure to conduct an adequate inquiry into Mr. Saleem's attorney-client relationship with Mr. Martinez; and (2.) improperly applying the legal standard to deny his motions for substitution of counsel.[1]

The second ground plainly concerns legal decisions, but the first ground requires further discussion. Whether or not the trial court should have engaged in a more thorough examination of Mr. Saleem and Mr. Martinez's attorney-client relationship concerns the court's application of its own legal procedures, which at first glance appears to be a straightforward legal issue that should be considered under Section 2254(d)(1). However, there may be circumstances when a state courts' procedures are so deficient that they "can affect the reasonableness of the court's subsequent factual determinations." *Smith v. Aldridge*, 904 F.3d 874, 882 (10th Cir. 2018). Mr. Saleem appears to make such an argument here on the basis that, had the trial court probed further, facts would have

---

[1] Notably, Mr. Saleem does not allege his counsel's performance was so deficient that it was actually ineffective under the Sixth Amendment. In other words, he argues the error lies in the state courts' exercise of discretion resulting in a *constructive* denial of his right to the effective assistance of counsel, which is distinct from whether his attorney actually failed to provide adequate representation. *See Hare v. Minard*, No. 21-cv-10454 (JEL), 2024 WL 1184692, at *6 (E.D. Mich. Mar. 19, 2024) ("A claim involving the constructive denial of counsel is separate and distinct from an ineffective assistance of counsel claim."); *Estrada v. Ourique*, No. 25-cv-2835 (JST), 2026 WL 618198, at *3 (N.D. Cal. Mar. 5, 2026) (explaining how "Sixth Amendment actual conflict-of-interest claim is analytically distinct from claims alleging ineffective assistance of counsel"); *Chester v. Horn*, No. 99-cv-4111, 2013 WL 2256218, at *2 n.2 (E.D. Pa. May 22, 2013) (same). Moreover, the Court would deny any such claim on procedural grounds because Mr. Saleem did not raise the issue in his state court appeals. *See* 28 U.S.C. 2254(b)(1) (establishing exhaustion requirement); *O'Sullivan v. Boerckel*, 526 U.S. 844-45 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Saleem,* 2023 WL 4852979 (state appellate decision in Mr. Saleem's case); (ECF No. 16 at 2-94, 153-56, Mr. Saleem's state appellate legal briefs). Nor does Mr. Saleem challenge the trial court's decision to appoint counsel even when he asked to proceed pro se. Though Mr. Saleem raised this argument in his direct appeals (*see* ECF No. 16 at 43-44), he has not presented it here. Any such argument is unlikely to have been meritorious in any event. *See United States v. Prucha*, 858 F.3d 1184, 1186-87 (8th Cir. 2017) (stating requests to proceed pro se during trial may be denied as untimely).

been revealed that would have rendered the court's factual determination to be unreasonable. (ECF No. 3 at 11-12.) But the only allegations Mr. Saleem makes concerning his relationship with Mr. Martinez are allegations that *were* presented to the Minnesota courts without a more probing inquiry. (*See* ECF No. 3 at 12-14.) In other words, he fails to allege any facts that the Minnesota courts could have considered had the trial court done a more searching inquiry. Therefore, the Court cannot conclude that the relevant trial court procedure affected any factual determinations the state courts made. For these reasons, the Court finds the question of whether the trial court should have conducted a more searching inquiry is solely a legal one that ought to be considered under Section 2254(d)(1) and does not require consideration under 2254(d)(2).

Having clarified the appropriate framework of analysis, the Court turns to the merits of Mr. Saleem's first two grounds for federal habeas relief and concludes they are fatally deficient because there is no Supreme Court precedent that clearly establishes a right to substitution of counsel under the Sixth Amendment when there is an irretrievable breakdown in the attorney-client relationship. To successfully challenge the Minnesota courts' legal decisions, Mr. Saleem cannot rely on the existence of any Federal law that the state court may have violated or unreasonably applied; rather, he must "be able to point to a Supreme Court precedent that he thinks the … state courts acted contrary to or unreasonably applied." *United States v. Owsley*, 234 F.3d 1055, 1057 (8th Cir. 2000). Mr. Saleem's Petition cites the Sixth Amendment right to counsel. (ECF No. 3 at 16, "Because the state court violated Saleem's Sixth Amendment right when failed to substitute counsel. I ask this court to set aside my conviction. And grant me a new trial.") The Sixth Amendment is federal law, and the *Eighth Circuit* has held that the Sixth Amendment requires courts to substitute counsel when there is an irretrievable breakdown in the attorney-client relationship. *See United States v. Delacruz*, 865 F.3d 1000, 1008 (8th Cir. 2017) (quoting *United States v. Barrow*, 287 F.3d 733, 738 (8th Cir.

2002)).  But Mr. Saleem's argument fails because he has not identified a *Supreme Court* decision holding that the Sixth Amendment requires substitution under that circumstance.  *See Owsley*, 234 F.3d at 1057 (affirming denial of habeas petition because petitioner failed to identify Supreme Court precedent that Sixth Amendment requires substitution of counsel based on irretrievable breakdown in attorney-client relationship); *Starnes v. Minnesota*, No. 14-cv-1159 (MJD/SER), 2015 WL 5333819, at *6 (D. Minn. Sept. 10, 2015) (same); *Lawson v. Warden, Noble Corr. Inst.*, No. 3:22-cv-40 (MJN/EAPD), 2023 WL 4182119, at *8 (S.D. Ohio June 26, 2023) (denying habeas petition in part because the Supreme Court has not held that good cause inquiry is required prior to deciding motion for substitution of counsel); *see also Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. §2254(d)(1).  It therefore cannot form the basis for habeas relief under AEDPA.").  If Mr. Saleem's trial had been held in federal court, the outcome might be different.  But he was tried in state court, and therefore, the Court must apply the clear and narrow dictates of Section 2254, which require state courts to have made a legal decision contrary to clearly established Supreme Court precedent.

Mr. Saleem cites several Supreme Court cases that he argues establish a Sixth Amendment right to substitution of counsel under these circumstances.  (ECF No. 18 at 2, listing cases.)  The Court's decisions in these cases do not clearly stand for that proposition, however.  *See Entsminger v. Iowa*, 386 U.S. 748 (1967) (holding an indigent petitioner was denied constitutionally adequate appellate review because state appellate courts decided appeal based on truncated evidentiary record); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding Sixth Amendment guarantees assistance of counsel in state criminal proceedings); *United States v. Gonzales-Lopez*, 548 U.S. 140 (2006) (holding Sixth Amendment guarantees right to retain qualified counsel of choice); *Bailey v.*

*United States*, 516 U.S. 137 (1995) (holding evidence of proximity and accessibility of a firearm is inadequate to support conviction for use of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)); *Wood v. Georgia*, 450 U.S. 906 (1981) (remanding matter to state court to determine whether defendants' counsel had conflict of interest because of financial relationship with defendants' employer).

Mr. Saleem also cites *United States v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977) (per curiam), *cert. denied*, 434 U.S. 906, in which the Court denied a petition for a writ of certiorari in a matter related to substitution of counsel. (*See* ECF No. 18 at 3.) But denials of petitions for writs of certiorari have no binding precedential value. *See Teague v. Lane*, 489 U.S. 288, 296 (1989). Therefore, they cannot constitute clearly established federal law under Section 2254(d)(1).

Mr. Saleem fails to identify any Supreme Court decision addressing the substitution of counsel issue at the heart of his Petition. The Petition's first two grounds are fatally deficient under Section 2254(d)(1) for this reason.

## III.    Section 2254(d)(2) – The State Courts' Factual Determinations

Mr. Saleem's last ground for habeas relief challenges the Minnesota courts' failure to recognize that there was a breakdown in his attorney-client relationship with Mr. Martinez when he requested a substitution of counsel. (ECF No. 3 at 2, 15; ECF No. 18 at 1, 4.) He argues the trial court's failure to make this factual determination led to the deprivation of his Sixth Amendment right to the effective assistance of counsel. For a petitioner to obtain habeas relief based on a state court's determination of the facts, he must prove by clear and convincing evidence that no reasonable mind would agree with the state court's factual determination. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006); 28 U.S.C. 2254(e)(1). Put differently, "[i]f reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial

court's determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (citation modified). Though this is a *highly* deferential standard of review, it "does not imply abandonment or abdication of judicial review and does not by definition preclude relief." *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Finally, "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

When considering a state trial court's factual determination, the reviewing federal court does "not question the propriety of the legal standard the trial court applied" and presumes that it is in accord with the federal law that the standard seeks to uphold. *Brumfield*, 576 U.S. at 313. To establish a right to substitute counsel in Minnesota state courts, there must be "exceptional circumstances" and the request for substitution must be "timely and reasonably made." *State v. Worthy*, 583 N.W.2d 270, 278 (Minn. 1998). "[E]xceptional circumstances are those that affect a court-appointed attorney's ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001). "Conversely, general dissatisfaction with appointed counsel's representation or personal tension between a defendant and their appointed counsel" do not constitute exceptional circumstances. *Saleem*, 2023 WL 4852979, at *6 (citing *Gilliam*, 629 N.W.2d at 449; *State v. Voorhees*, 596 N.W.2d 241, 255 (Minn. 1999)).

Based its own review of the record, including the transcripts attached to the parties' submissions, the Court concludes that Mr. Saleem has failed to show by clear and convincing evidence that the Minnesota trial court's factual determinations in denying his requests for substitute counsel were erroneous. Mr. Saleem requested a substitution of counsel on two occasions. The first request was made in November 2020, when Mr. Saleem complained about Mr. Martinez's lack of

communication. (ECF No. 16 at 203-09.) This request was timely made, as trial had not even been scheduled at that time. (*See* ECF No. 16 at 207, trial court stating desire to set trial date.) But the trial court denied the request, and the Minnesota Court of Appeals affirmed because "[t]hese allegations reflect [Mr.] Saleem's general dissatisfaction with the public defender rather than issues with the public defender's ability or competence." *Saleem*, 2023 WL 4852979, at *7.

The Court does not find this interpretation of the facts to be unreasonable. Mr. Saleem's complaints about Mr. Martinez's communication could suggest that Mr. Martinez was not diligently prosecuting Mr. Saleem's case. But even assuming Mr. Saleem's allegations are true, which no Minnesota court appears to have doubted, these facts do not necessarily mean that Mr. Martinez was incompetently representing Mr. Saleem's interests. Furthermore, a key issue at the same hearing was the government's disclosure of significant outstanding discovery. (ECF No. 16 at 206-07.) It is therefore unsurprising that Mr. Martinez had not communicated with Mr. Saleem at great length at that time. Because reasonable jurists could interpret these facts differently, the Court cannot say that the Minnesota courts made unreasonable determinations of fact in evaluating the merits of Mr. Saleem's first request for substitution of counsel.

Mr. Saleem's second request was made during voir dire and was premised on several complaints regarding Mr. Martinez's trial strategy, lack of communication and lack of diligence in mounting a defense, and an allegation that Mr. Martinez yelled at Mr. Saleem's girlfriend after a hearing. (ECF No. 16 at 217-19.) Though the trial court did not explicitly deny Mr. Saleem's request, it effectively did so when it told Mr. Saleem that he only had two options: proceed pro se or move forward with Mr. Martinez as his counsel. (*Id.* at 221-22.) Additionally, when the court granted Mr. Saleem's request to proceed pro se a few days later, it stated that no exceptional circumstances existed that would justify substitution of counsel. (*Id.* at 240.) The Minnesota Court

of Appeals affirmed the court's decision because it concluded that "the allegations [Mr.] Saleem made in support of his second request for substitute counsel do not rise to the level of serious allegations of inadequate representation." *Saleem*, 2023 WL 4852979, at *8.

The Court does not find this interpretation of the facts to be unreasonable. Mr. Saleem's primary complaints relate to Mr. Martinez's lack of communication with Mr. Saleem and Mr. Martinez's trial strategy decisions. Mr. Martinez's failure to communicate with Mr. Saleem more frequently obviously dissatisfied Mr. Saleem, but as previously stated, that deficiency does not necessarily mean that Mr. Martinez was not adequately representing Mr. Saleem's interests. Differences in opinion concerning trial strategy also do not mean Mr. Martinez was representing Mr. Saleem's interests inadequately; in fact, Mr. Saleem's lay preferences may have been against his interest in seeking acquittal. As for the lack of diligence claim, the record does not demonstrate that the state courts unreasonably ignored or misunderstood evidence suggesting Mr. Martinez was inadequately representing Mr. Saleem. Indeed, Mr. Martinez tried to avoid reappearing in the case because he was concerned that he could no longer do so adequately in light of his absence from part of the proceedings after Mr. Saleem demanded his removal. (ECF No. 16 at 291-92.) The trial court resolved this concern by providing Mr. Martinez time to review the transcript. There is no suggestion in the record that Mr. Saleem was prejudiced by that decision, and Mr. Saleem does not appear to challenge the reasonableness of the court's remedy.

Finally, the state courts did not dispute Mr. Saleem's factual allegation that Mr. Martinez yelled at his girlfriend. (*See* ECF No. 16 at 218-221.) They nevertheless concluded that this allegation did not amount to exceptional circumstances warranting substitution of counsel. This conclusion was not unreasonable because the courts could have believed that this was simply another source of personal tension between the two men, and not an event that implicated Mr. Martinez's

ability or competence to represent Mr. Saleem. *See Voorhees*, 596 N.W.2d at 255 (affirming denial of request for substitute counsel because "personal tension" between defendant and counsel did not go "to issues of ability or competence" of representation). The Court will not overturn the state courts' application of the legal standard to the facts as they interpreted them for the above-stated reasons, and in any event, the Court finds their conclusion was not unreasonable.

Because the state courts did not make any decision that was contrary to clearly established federal law or make unreasonable factual determinations, the Court recommends that Mr. Saleem's Petition be denied.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Zaki Malik Saleem's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (ECF No. 1) be **DENIED.**

Dated:  May 14, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).